IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| THOMAS GARCIA SINGLETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15CV200–HEH |
| | ) | |
| Dr. EMRAN, *et. al*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION
(Granting in Part Motions to Dismiss)

Thomas Garcia Singleton, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Singleton contends that Defendants Dr. Emran, Correct Care Solutions, and Sheriff C.T. Woody denied him adequate medical care during his incarceration in the Richmond City Jail ("RCJ"). The matter is before the Court on the Motions to Dismiss filed by Defendants Emran and Correct Care Solutions (ECF No. 25) and Defendant Woody (ECF No. 27). Singleton has responded. (ECF No. 34.) For the reasons stated below, Defendant Woody's Motion to Dismiss will be granted. The Motion to Dismiss filed by Defendant Emran and Correct Care Solutions will be granted in part and denied in part.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

## I. STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin,* 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

2

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS

In his Amended Complaint ("Complaint," ECF No. 17),[2] Singleton alleges that Defendants denied him adequate medical care for a broken finger in violation of the Eighth Amendment,[3] during his incarceration in the RCJ. Singleton alleges:

> On May 10, 2013, I, Thomas G. Singleton broke my finger (fractured) at about 1 or 2 o'clock (p.m.) on the recreation yard at the Richmond City Jail. Deputy Franklin immediately took me to medical staff. There, Nurse Thompson only buddy taped (taped my broken, left-middle, finger to my left, ring finger). I was told to go back to population and wait for an x-ray tech to show up.

---

[2] The Court employs the pagination assigned to the Complaint by the CM/ECF docketing system. The Court omits the numbering and corrects the punctuation in quotations from the Complaint and adds paragraph structure.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

3

At about 4 or 4:30 (p.m.), an x-ray tech from Global Dynamic Imaging confirmed that my left-middle finger was broken. At that point, I asked jail staff to be immediately transported to [the] hospital. I was given the "run around." That next day, Saturday, May 11, 2013, Global Dynamic Imaging returned and did another x-ray.

I began filing grievances on May 13, 2013, complaining that my finger was in crucial pain and that it was broken; and I also complained about not being taken to the hospital. When I saw Dr. Emran that same morning, he stated he seen results of x-ray; that he understood my finger was broken, "fractured or dislocated," yet, he stated he was merely going to call and speak to his supervisor. From that day, on through to the 11th of July 2013, I filed grievances constantly requesting to receive emergency medical assistance. I was very much aware that if I let my broken finger heal without replacing (re-setting) it, it would heal improperly. I was constantly told not to "reset" my finger myself (by staff, as well as by other inmates and even family). I was constantly told that an evaluation with an orthopedic was being scheduled. I did not see the hand surgeon until July. He informed me that due to cartilage and tissue reforming, I will have to undergo surgery to reset my finger.

On July 11, 2013, surgery was performed by hand surgeon. Since then, I have been to hospital once or twice every two months for therapy. This process ended about January 2014. The hospital staff all told me to do my own therapy whenever, and as often, as I could.

Towards the end of 2014, I began to realize that my left-middle finger will not be getting anywhere close to the way it was before May 10, 2013. It is permanently damaged and is not fully functional. I feel that Dr. Emran (with Correct Care Solutions) is responsible for [the] failure to respect my rights for emergency medical attention. Every staff member and deputy that I asked, "Who was in charge of emergency procedure," stated that whatever doctor was on duty during time of injury was responsible for making the call. Dr. Emran, himself, even informed me that he was responsible. I also remember asking Dr. Emran on one of our last "follow-up" appointments why he would delay emergency medical treatment when he confirmed that my finger was broken, "fractured and dislocated." His response I can't exactly state. Yet I'm clear that he generally stated that whenever he sends someone to emergency room he has to notify his supervisor. So if that was his response to my question, then I feel that he didn't send me to emergency treatment because he didn't want to notify or disturb his supervisor.

Also, when I was receiving therapy at MCV Medical Center, the staff strongly recommended—and was anticipating—further therapy sessions with me. I relayed this to Dr. Emran and he stated that again he

4

> prefers not to call supervisor often. He also stated that there are costs concerning every trip to the hospital.
>
> I feel that Correct Care Solutions is liable because there may be a policy concerning inmates and procedure for medical care. . . . I feel that there's an unwritten policy or written policy that denied [me my] 8th Amendment right to avoid "deliberate indifference." They fail to properly train employees.
>
> I also feel that Sheriff C.T. Woody is liable to me because I alerted various members of his staff and they did not take my plea for emergency care seriously. . . . There ha[ve] been previous lawsuits against either the jail or the sheriff concerning medical treatment. So I am positive that he is aware of the patterns and habits of his employees to become deliberately indifferent to pressing medical situations. . . . .

(Compl. 7–11, ECF No. 17.) Singleton seeks monetary damages. (*Id.* at 12.) The Court construes Singleton to raise the following claims for relief:

Claim One: Dr. Emran denied Singleton adequate medical care for his broken finger by:
    (a) not sending him to the emergency room; and,
    (b) delaying a referral to a specialist.

Claim Two: Correct Care Solutions denied Singleton adequate medical care for his broken finger.

Claim Three: Sheriff Woody denied Singleton adequate medical care because he was aware of the inadequate medical care his staff provided.

### III. ANALYSIS

#### A. Defendant Woody

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a

5

theory of *respondeat superior.*" *Iqbal v. Ashcroft*, 556 U.S. 662, 676 (2009) (citations omitted). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Singleton fails to allege facts indicating that Defendant Woody, through his own individual actions, violated Singleton's Eighth Amendment right to adequate medical care. To the extent that Singleton alleges that Defendant Woody is liable on the basis of supervisory liability or was responsible for a "pattern" or custom of indifference to inmates' medical care, Singleton also fails to adequately plead such a claim.

First, to set forth a claim of supervisory liability under § 1983 an inmate must allege facts indicating:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted) (citations omitted). Singleton fails to allege any of these three factors. Singleton claims that Defendant Woody is liable under a theory of supervisory liability because "various members of his staff . . . did not take my plea for emergency care seriously" and he should be aware of "patterns and habits of employees" due to prior lawsuits against the jail. (Compl. 11.) Singleton fails to identify with specificity any of the above elements required to adequately allege that Defendant Woody should be liable based upon a theory

of supervisory liability. He does not identify a subordinate who was engaged in conduct that posed "a pervasive and unreasonable risk of constitutional injury," does not allege facts indicating that Defendant Woody knew about this conduct or responded inadequately, and does not show that Defendant Woody's inaction was the cause for Singleton's injuries. *See Shaw*, 13 F.3d at 799. Accordingly, any claim against Defendant Woody based on supervisory liability will be dismissed without prejudice.

Singleton's claim against Defendant Woody based on an alleged policy or custom of inadequate medical care also fails. To allege such a claim, Singleton must plead facts indicating that: (1) Defendant Woody had an official policy or custom of providing unconstitutional medical care; (2) that this official policy or custom reflected deliberate indifference to Singleton's Eighth Amendment rights; and, (3) that this policy or custom caused or contributed to the cause of Singleton's allegedly inadequate medical care. *Spell v. McDaniel*, 824 F.2d 1380, 1385–88 (4th Cir. 1987). An unconstitutional official policy or custom

> can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Singleton claims that Defendant Woody is liable because his staff "did not take my plea for emergency care seriously" and he should be aware of "patterns and habits of

employees" due to prior lawsuits against the jail. (Compl. 11.) Presumably, Singleton argues that Defendant Woody either failed to properly train officers to be attentive to Singleton's medical needs or that the practice of failing to provide medical care is "so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle*, 326 F.3d at 471 (internal quotation marks omitted) (citations omitted). Singleton fails to identify with requisite specificity an official policy or custom of providing unconstitutional medical care by Defendant Woody that resulted in Singleton's allegedly inadequate medical care. Thus, Singleton has failed to state a claim against Defendant Woody. Accordingly, Defendant Woody's Motion to Dismiss (ECF No. 27) will be granted. Claim Three will be dismissed without prejudice.

**B.     Defendants Emran and Correct Care Solutions**

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

8

In the context of delayed medical care, in addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "'resulted in substantial harm.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d

9

336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to

have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

### 1. Dr. Emran

Singleton faults Dr. Emran because he disagrees with the course of treatment and the timing of that treatment. Specifically, in Claim One, Singleton contends that: (a) Dr. Emran should have sent him to the emergency room; and (b) Dr. Emran delayed a referral or appointment with the orthopedic surgeon.

Singleton's allegations make clear that he received significant medical care for his broken finger. On May 11, 2013, the day Singleton broke his finger, prison officials immediately took him to the medical department where he was seen by the nurse who taped his fingers. Approximately two to three hours later, Singleton had x-rays taken of his finger. At that point, Singleton desired to go to the emergency room. The following day Singleton's finger was x-rayed a second time. Dr. Emran saw Singleton on May 13, 2013. Dr. Emran informed Singleton that he saw the x-ray and that Singleton's finger was "'fractured or dislocated.'" (Compl. 7.) Staff repeatedly told Singleton not to attempt to re-set his finger on his own. Singleton alleges that he "was constantly told that an evaluation with an orthopedic was being scheduled" but he did not see one until July. On July 11, 2013, Singleton had surgery to re-set his finger. (*Id.* at 8.) Singleton then received physical therapy for his finger for the next six months. (*Id.*)

First, despite his desire to be sent to the emergency room on the day of his injury or in the days thereafter, Singleton fails to allege facts indicating that Dr. Emran knew of and disregarded an excessive risk of harm to Singleton's health. Singleton fails to

suggest that Dr. Emran knew or should have known that Singleton's broken finger required an emergency room visit. Dr. Emran had x-rays taken of Singleton's finger, he observed the x-rays, diagnosed Singleton with a broken or dislocated finger, and ordered a referral for Singleton to an orthopedic surgeon. Singleton fails to plausibly allege that Dr. Emran's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Miltier*, 896 F.2d at 851 (citation omitted). Instead, Dr. Emran's actions appear to be a prudent course of action. Singleton states nothing more than a disagreement with Dr. Emran about the appropriate course of treatment and he lacks entitlement to the medical care of his choosing. *See Wright*, 766 F.2d at 849 (citations omitted); *Hudson*, 503 U.S. at 9 (1992) (citation omitted). Singleton fails to allege facts that plausibly suggest that Dr. Emran was deliberately indifferent to Singleton's serious medical needs. Thus, to the extent that Singleton faults Dr. Emran for his failure to send Singleton to the emergency room, he fails to state an Eighth Amendment claim. Dr. Emran's Motion to Dismiss will be granted with respect to Claim One (a). Claim One (a) will be dismissed.

Second, Singleton faults Dr. Emran for the delay in his referral or appointment with the orthopedic surgeon. Singleton contends that between May 10, 2013 when he broke his finger and when he saw the orthopedic surgeon in July he experienced "crucial pain" (Compl. 7), and that the orthopedist indicated "that due to cartilage and tissue reforming, [Singleton would] have to undergo surgery to re-set [his] finger." (*Id.* at 8.) Singleton contends that his finger "will not be getting anywhere close to the way it was before May 10, 2013" and that "[i]t is permanently damaged and is not fully functional."

12

(*Id.* at 8–9.) With respect to Singleton's claim about the delay in referral to the orthopedic surgeon, the Court finds that, on this record, Singleton sufficiently alleges a claim against Dr. Emran to survive a motion to dismiss. Accordingly, Dr. Emran's Motion to Dismiss will be denied with respect to Claim One (b).

### 2. Correct Care Solutions

To the extent that Singleton seeks to hold Correct Care Solutions liable for the actions of Dr. Emran, he fails to state a claim for relief. A private corporation cannot be held liable "for torts committed by [its employees] when such liability is predicated upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Instead, "a private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* (citations omitted). Thus, as previously discussed, Singleton must allege that: (1) Correct Care Solutions had an official policy or custom of providing unconstitutional medical care; (2) that this official policy or custom reflected deliberate indifferent to Singleton's Eighth Amendment rights; and, (3) that this policy or custom caused or contributed to the cause of Singleton's allegedly inadequate medical care. *Spell*, 824 F.3d at 1385–88.

Singleton vaguely suggests that Correct Care Solutions "is liable because there may be a policy concerning inmates and procedure for medical care. . . . I feel that there's an unwritten policy or written policy that denie[d me my] 8th amendment right to avoid 'deliberate indifference.'" (Compl. 10.) Thus, at most, Singleton speculates that he "feels" that there may be a policy that caused a violation of his Eighth Amendment

rights. However, Singleton fails to allege facts indicating the existence of "an official policy or custom" of Correct Care Solutions that deprived him of his Eighth Amendment right to medical care.[4] To the contrary, as previously discussed, Singleton alleges facts showing the he received a great deal of medical care for his finger; he just disagrees with the care he was provided.

Correct Care Solutions construes Singleton to argue that "the [alleged] 'policy' of [Correct Care Solutions] required Dr. Emran to consult with his supervisors before sending an inmate to the emergency department." (Mem. Supp. Mot. Dismiss 6.) However, Singleton's own Complaint and his Response negate his allegation that an official policy of Correct Care Solutions exists pertaining to the decision to send an inmate to the emergency room. In his Complaint, Singleton states: "If Dr. Emran had to get 'permission' from his supervisor to order I believe he would've told me so." (Compl. 10.) Later in his Response, Singleton also changes his allegation against Correct Care Solutions in an effort to bolster his claim against Dr. Emran, and provides: "[Dr. Emran] stated that whenever he sends someone to emergency room he has to *notify* his supervisor. This doesn't mean that he needs permission. Dr. Emran had every power to send me to the emergency room . . . ." (Resp. 6, ECF No. 34.) Thus, Singleton's own allegations dispel the notion that Correct Care Solutions had "an official policy or custom" that required Dr. Emran to seek permission before sending Singleton to the

---

[4] Singleton fails to identify a written policy, a decision by a final policymaking authority, an omission, or a practice that is that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle*, 326 F.3d at 471 (citation omitted).

14

emergency room.[5] Singleton fails to allege facts indicating that a policy of Correct Care Solutions existed that deprived him of his Eighth Amendment rights with regard to his medical care. *See Smith v. Conmed Healthcare Mgmt.*, No. 7:15–CV–00449, 2015 WL 9027722, at *4–5 (W.D. Va. Dec. 15, 2015).[6] Accordingly, Correct Care Solutions's Motion to Dismiss will be granted. Claim Two will be dismissed.

### III. CONCLUSION

Defendant Woody's Motion to Dismiss (ECF No. 27) will be granted. Defendant Correct Care Solutions and Dr. Emran's Motion to Dismiss (ECF No. 25) will be granted in part and denied in part. Claims One (a) and Two will be dismissed. Claim Three will be dismissed without prejudice. Any party wishing to file a dispositive motion with respect to Claim One (b) must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Jan 26, 2017
Richmond, Virginia

---

[5] Additionally, even if such a policy existed, Singleton fails to plausibly suggest how a policy that required a doctor to seek permission from a supervisor before sending an inmate to the emergency room would, standing alone, violate the Eighth Amendment.

[6] Singleton also vaguely suggests that Correct Care Solutions "fail[s] to properly train employees." (Compl. 10.) Singleton provides no supporting facts that plausibly allege a claim of failure to train by Correct Care Solutions. *See Brown v. Mitchell*, 308 F. Supp. 2d 682, 701–702 (E.D. Va. 2004) (providing standard to state a claim for failure to train under § 1983).